**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ECM STRAITS FUND I, LP, *et. al*,<br><br>Debtors in a Foreign Proceeding. | **NOT FOR PUBLICATION**<br><br>Case No 23-12044 (MG)<br><br>(Jointly Administered) |

**MEMORANDUM OPINION (I) AUTHORIZING THE FOREIGN REPRESENTATIVES TO ENTER INTO SETTLEMENT AGREEMENT PURSUANT TO BANKR. R. 9019(A) AND (II) ENTRUSTING ASSETS TO THE FOREIGN REPRESENTATIVES FOR DISTRIBUTION IN THE CAYMAN ISLANDS PROCEEDINGS**

*A P P E A R A N C E S:*

PILLSBURY WINTHROP SHAW PITTMAN LLP
*Attorneys for the Foreign Representatives*
31 West 52nd Street
New York, NY 10019
By:   John A. Pintarelli, Esq.
      Rahman Connelly, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the uncontested motion (the "Motion," ECF Doc. # 25) of (i) Michael Green, Michael Penner, and Matthew Becker, the duly appointed joint official liquidators and recognized foreign representatives (the "ECM Liquidators") of foreign debtor ECM Straits Fund I, LP (In Official Liquidation) ("ECM"), and (ii) Michael Green and Matthew Becker, the duly appointed joint official liquidators and recognized foreign representatives (the "TEC Liquidators" and, together with the ECM Liquidators, the "Foreign Representatives") of foreign debtor TransAsia E-Commerce Inc. (In Official Liquidation) ("TEC" and together with ECM, the "Foreign Debtors").  The Motion seeks entry of an order authorizing the Foreign Representatives to enter into a settlement agreement (the "Settlement Agreement" and the settlement it embodies, the "Settlement") with KludeIn Fund II, LLC ("KludeIn II"), KludeIn

Fund III, LLC ("KludeIn III"), KludeIn Fund V, LLC ("KludeIn V" and together with KludeIn II and KludeIn III, the "KludeIn Funds"), ZeeMee, Inc. ("ZeeMee"), and Phenom People, Inc. ("Phenom People") that provides for the transfer and turnover of certain stock to the Foreign Debtors.

Annexed to the Motion are (i) a proposed order granting the relief sought as Exhibit A, and (ii) a copy of the Settlement Agreement as Exhibit B. In support of the Motion, the Foreign Representatives have also filed the declaration of Michael Green, one of ECM and TEC Liquidators (the "Green Decl.," ECF Doc. # 26).

The objection deadline to the Motion was October 30, 2024 at 4:00 p.m. No objections were received. A hearing on the Motion was held on November 6, 2024.

For the reasons discussed below, the Court (i) **GRANTS** the Motion and **APPROVES** the Settlement, and (ii) **APPROVES** the request for the ZeeMee and Phenom Shares (each defined below) to be transferred to the Foreign Representatives for distribution in the Foreign Debtors' pending official liquidation proceedings in the Cayman Islands pursuant to section 1521(b) of the Bankruptcy Code.

### I. BACKGROUND

#### A. In General

ECM was formed to make venture capital investments in tech-enabled growth companies located primarily in the United States, Malaysia, Indonesia, and Turkey. (Motion ¶ 4.) ECM is in an official liquidation proceeding pending before the Grand Court of the Cayman Islands (the "ECM Liquidation"). (*Id.*) As of the date on which it entered liquidation, it held direct or indirect investments in twelve portfolio companies. (*See Declaration of Michael Green in Support of Chapter 15 Petition for Recognition as a Foreign Main Proceeding* (the "Green

2

Recognition Decl.," ECF Doc. # 3) ¶ 21.)  ECM made many of its investments through its wholly owned subsidiary, TEC.  (Motion ¶ 4.)

TEC is also in official liquidation in the Cayman Islands (such proceeding, the "TEC Liquidation" and together with the ECM Liquidation, the "Cayman Proceedings").  (*Id.*)  Prior to entering liquidation, the Foreign Debtors had three directors: Arshad Ahmed, Abrar Hussain, and Amiruddin Azahar.  (*Id.*)

This Court granted recognition of the Cayman Proceedings as foreign main proceedings pursuant to 11 U.S.C. §§ 1517(a) and (b)(1) on January 30, 2024.  (*See Order Granting Recognition and Relief in Aid of a Foreign Main Proceeding Pursuant to Sections 1504, 1509, 1515, 1517, 1520, and 1521 of the Bankruptcy Code* (the "ECM Recognition Order"), ECF Doc. # 15); *Order Granting Recognition and Relief in Aid of a Foreign Main Proceeding Pursuant to Sections 1504, 1509, 1515, 1517, 1520, and 1521 of the Bankruptcy Code* (the "TEC Recognition Order" and together with the ECM Recognition Order, the "Recognition Orders"), Case No. 23-12047, ECF Doc. # 9).)  The Foreign Debtors' chapter 15 cases are jointly administered under ECM's main case.  (*See Order Directing the Joint Administration of the Debtors' Chapter 15 Cases*, ECF Doc. # 8.)

**B.      Elixir America and its Investments**

In 2015 and 2016, the Foreign Debtors invested indirectly in certain common and preferred stock issued by Delaware corporations Phenom People and ZeeMee or their predecessor entities.  (Motion ¶ 1.)  Upon their appointment, the Foreign Representatives discovered that several of investments reported in the Foreign Debtors' books and records as being held by TEC were in fact made through an investment in the KludeIn Funds, unaffiliated limited liability companies that sold membership interests to various investors and operated as

3

private investment funds. (*Id.* ¶ 1; *id.* ¶ 5 (citing Green Decl. ¶ 4).) Although the Foreign Debtors' financial records make clear that money used to make these investments came from ECM, the investments were made indirectly through Elixir America Holdings, Inc. ("Elixir America"), a Delaware corporation, which nominally held membership interests in the KludeIn Funds.[1] (*Id.* ¶ 1; *id.* ¶ 5 (citing Green Decl. ¶¶ 5—12, 15–22, Exs. B–E, H–O).) Mr. Hussain, one of the Foreign Debtors' three directors, was an agent for Elixir America.[2] (*Id.* (citing Green Decl, Ex. F).)

The Foreign Representatives indicate that they are unclear as to why the stock was not registered in Foreign Debtors' name but was instead held in the name of the KludeIn Funds who later registered the stock with Elixir America. (*Id.* ¶ 1.) Delaware corporate records indicate,

---

[1] At the time of the Foreign Representatives were seeking recognition, they were unable to "establish the relationship between Elixir America and [ECM]." (Green Recognition Decl. ¶ 30.) It was also unknown at the time whether Elixir American still held the shares in Phenom People. (*Id.* ¶ 31.) The Foreign Representatives stated only:

> The Liquidators obtained a copy of an executed stock transfer agreement from the representative of the KludeIn Funds which shows that the agreement was executed on behalf of Elixir America by Mr. Hussain, as an authorized signatory of Elixir America. Further, through discussions with the KludeIn Funds' representative, it appears that Mr. Hussain previously gave instructions to transfer the shares held by the KludeIn Funds in ZeeMee to MAVCAP. However, when trying to progress the transfer of these shares to MAVCAP, Mr. Hussain became unresponsive.

(*Id.*)

[2] The prior Green Declaration submitted in connection with recognition also includes the following discussion of what appears to be entities affiliated with Elixir America:

> Pursuant to the Partnership Agreement, Elixir Capital Management Ltd ("Elixir"), a Cayman Islands company, acted as manager to the Partnership. It appears that Elixir was struck off the Cayman Islands Register of Companies on March 31, 2015. The Liquidators have seen correspondence from "Elixir Capital Management" ("Elixir US"), with an address at 855 El Camino Real, 13A-171, Palo Alto, CA 94301 which purports that Elixir US acts on behalf of the Partnership. This letter is signed by Mr Hussain on behalf of Elixir US. The Liquidators have not yet identified the contractual relationship between the Partnership and Elixir US but it appears that Elixir US is controlled by at least Mr Hussain and may be affiliated with Elixir.

(Green Recognition Decl. ¶ 14.)

4

however, that Elixir America failed to pay franchise taxes in 2018 and, as a result, became void. (*Id.* ¶ 6 (citing Green Decl., Ex. G).) Delaware law provides for a three-year wind-up period following a corporate entity's entry into "void" status. (*Id.*) Accordingly, Elixir America ceased to exist in 2021. (*Id.*)

The Motion and Settlement relate to these investments made in Elixir America's name via the KludeIn Funds in ZeeMee and Phenom People. (*Id.* ¶ 7.) Each is addressed in turn.

1. The ZeeMee Portfolio Company.

The Foreign Debtors' books and records indicate that ECM invested $250,000 to acquire preferred stock in ZeeMee in November 2015, and the investment was registered in the name of TEC. (*Id.* (citing Green Decl. ¶¶ 6–7, Ex. A).) However, the investment was, in fact, through the KludeIn Funds and the corresponding membership interest in the KludeIn Funds was registered in the name of Elixir America. (*Id.*)

As of the date hereof, KludeIn II is record owner of 146,705 shares of Series 1 Preferred Stock of ZeeMee (the "ZeeMee Series 1 Preferred Shares"), and KludeIn V is record owner of 646,677 shares of Series B-1 Preferred Stock of ZeeMee (the "ZeeMee Series B-1 Preferred Shares," and together with the ZeeMee Series 1 Preferred Shares, the "ZeeMee Shares"). (*Id.*)

2. The Phenom People Portfolio Company.

The Foreign Debtors' books and records indicate that in February 2016, ECM invested $202,000 to acquire securities issued by a company called Skedool.it. (*Id.* ¶ 8 (citing Green Decl. ¶¶ 6, 8, Ex. B).) As with the ZeeMee investment, this investment was also made through the KludeIn Funds with the corresponding membership interest in the KludeIn Funds registered in the name of Elixir America. (*Id.*) Ultimately, Skedool.it changed its name to My Ally at which point it was acquired by Phenom People. (*Id.* (citing Green Decl. ¶ 9, Ex. C).) As a result

5

of this acquisition, the securities of My Ally were ultimately converted to stock in Phenom People.  (*Id.*)

Prior to March 2022, KludeIn III held 45,938 shares of Phenom People common stock.  (*Id.*)  On March 2, 2022, KludeIn III purported to transfer 30,089 shares of the Phenom People common stock (the "Phenom Shares") to Elixir America and purported to transfer the balance of its Phenom People common stock to unaffiliated third parties.  (*Id.* ¶ 9 (citing Green Decl. ¶ 13, Ex. F).)  At the time, however, Elixir America was already wound up and had ceased to exist.  (*Id.* (citing Green Decl. ¶ 14, Ex. G).)

        C.        **The Settlement Agreement**

The Settlement Agreement resolves the Foreign Representatives' claims that the ZeeMee Shares and Phenom Shares are being held in a resulting trust for their benefit, or, alternatively, that Elixir America is a mere nominee such that the KludeIn Funds are obligated to turn the shares over to the estate pursuant to section 542 of the Bankruptcy Code.  (*Id.* ¶¶ 2, 10.)  As set forth in the Settlement Agreement, the KludeIn Funds have agreed to transfer all of their right, title, and interest in the ZeeMee Shares and the Phenom Shares to TEC, as ECM's designee.  (*Id.* ¶ 10.)

In turn, the Foreign Debtors have agreed to release the KludeIn Funds and the KludeIn Funds' legal predecessors, successors and assigns, affiliates, heirs, beneficiaries, executors, representatives, agents, servants, employees, attorneys, partners, and insurers, and each of them from any and all claims arising out of, based upon, or relating to the KludeIn Funds' exercise of possession of the ZeeMee Shares or the Phenom Shares.  (*Id.* ¶ 11.)  The Foreign Debtors have also agreed to join certain ZeeMee and Phenom People shareholder agreements, as a condition to

6

ZeeMee and Phenom People consenting to the share transfers contemplated by the Settlement Agreement.  (*Id.*)

### D.   The Motion

The Motion seeks entry of an order (i) approving the Settlement Agreement and (ii) entrusting the stock to the Foreign Representatives pursuant to section 1521(b) of the Bankruptcy Code.  (*Id.* ¶ 2.)  With respect to the former, the Foreign Representatives submit that each of the *Iridium* Factors (defined below) supports the Court's approval of the Settlement Agreement as it "falls well within the range of reasonableness."  (*Id.* ¶¶ 2, 15.)

Additionally, they maintain that relief is also warranted under section 1521(b) since the Cayman Proceedings provide a forum for all the Foreign Debtors' creditors (regardless of their domicile) to submit claims and be heard.  (*Id.* ¶ 3.)  Relief under section 1521(b), the Foreign Representatives argue, is also a natural extension of the Court's orders recognizing the Foreign Debtors' respective Cayman Proceedings as foreign main proceedings.  (*Id.*)  These orders entrusted the Foreign Debtors' U.S. assets to the Foreign Representatives and provided that they may transfer those assets for disposition in the Cayman Islands.  (*Id.*)

## II.   LEGAL STANDARD

### A.   Approval of Settlements Under Rule 9019

Rule 9019(a) of the Bankruptcy Rules governs the approval of compromises and settlements, and provides as follows:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States Trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

FED. R. BANKR. P. 9019(a).

7

While "settlements or compromises are favored in bankruptcy and, in fact, encouraged," a court must first determine that the proposed settlement "is fair and equitable and in the best interests of the estate." *In re Chemtura Corp.*, 439 B.R. 561, 595 (Bankr. S.D.N.Y. 2010); *In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991) (internal quotation marks omitted) (citing *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)); *see also In re Lehman Bros. Holdings*, 435 B.R. 122, 134 (S.D.N.Y. 2010).

The Second Circuit has set forth seven interrelated factors (the "*Iridium* Factors") to be considered by a court in deciding whether to approve a compromise or settlement:

> (1) [T]he balance between the litigation's possibility of success and the settlement's future benefits;
>
> (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment;
>
> (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement;"
>
> (4) whether other parties in interest support the settlement;
>
> (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement;
>
> (6) "the nature and breadth of releases to be obtained by officers and directors;" and
>
> (7) "the extent to which the settlement is the product of arm's length bargaining."

*In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007) (citations omitted). A court "need not conduct an independent investigation into the reasonableness of the settlement but must only canvass the issues and see whether the settlement falls below the lowest point in the

8

range of reasonableness." *Chemtura*, 439 B.R. at 594 (internal quotation marks omitted) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)).

In passing upon a proposed settlement, "the bankruptcy court does not substitute its judgment for that of the trustee." *Depo v. Chase Lincoln First Bank, N.A.*, 77 B.R. 381, 384 (N.D.N.Y. 1987), *aff'd sub nom. Depo v. Lincoln Bank*, 863 F.2d 45 (2d Cir. 1988) (citations omitted). Nonetheless, "while the 'approval of a settlement rests in the Court's sound discretion, the debtor's business judgment should not be ignored.'" *JPMorgan Chase Bank, N.A. v. Charter Commc'ns. Operating, LLC (In re Charter Commc'ns.)*, 419 B.R. 221, 252 (Bankr. S.D.N.Y. 2009) (quoting *In re Stone Barn Manhattan LLC*, 405 B.R. 68, 75 (Bankr. S.D.N.Y 2009)). In addition, the court may "give weight to the informed judgments of the trustee or debtor-in-possession and their counsel that a compromise is fair and equitable." *In re Kerner*, 599 B.R. 751, 756 (Bankr. S.D.N.Y. 2019) (quoting *Drexel Burnham*, 134 B.R. at 505).

**B.     Section 1521 of the Bankruptcy Code**

In general, section 1521 of the Bankruptcy Code permits a court, in its discretion, to order the entrustment of a foreign debtor's assets to the foreign representative. *In re Atlas Shipping A/S*, 404 B.R. 726, 740 (Bankr. S.D.N.Y. 2009). Relevant here, one of the two forms of discretionary entrustment permitted under section 1521 is set forth in subsection (b), which provides:

> Upon recognition of a foreign proceeding, whether main or nonmain, the court may, at the request of the foreign representative, entrust the distribution of all or part of the debtor's assets located in the United States to the foreign representative or another person, including an examiner, authorized by the court, provided that the court is satisfied that the interests of creditors in the United States are sufficiently protected.

11 U.S.C. § 1521(b). In other words, where assets are entrusted to the foreign representative for distribution outside the United States, section 1521(b) permits a court to do so as long as the

9

court finds that the interests of U.S.-based creditors are "sufficiently protected." *In re Markus*, 610 B.R. 64, 76 (Bankr. S.D.N.Y. 2019), *aff'd*, 620 B.R. 31 (S.D.N.Y. 2020) (quoting 11 U.S.C. § 1521(b)).

"Sufficient protection" embodies three basic principles: "the just treatment of all holders of claims against the bankruptcy estate, the protection of U.S. claimants against prejudice and inconvenience in the processing of claims in the [foreign] proceeding, and the distribution of proceeds of the [foreign] estate substantially in accordance with the order prescribed by U.S. law." *Id.* (alterations in original) (quoting *Atlas Shipping*, 404 B.R. at 740).

### III. DISCUSSION

As discussed in greater detail below, the *Iridium* Factors weigh in favor of approving the Settlement.

#### A. The *Iridium* Factors Weigh in Favor of Approval

##### 1. The Balance Between the Litigation's Possibility of Success and the Settlement's Future Benefits

The Foreign Representatives submit that they have a "strong basis" under governing law to seek an order for turnover of the ZeeMee and Phenom Shares pursuant to section 542 of the Bankruptcy Code. (Motion ¶ 16.)

*First*, the Foreign Representatives argue that the evidence supports their position that the Foreign Debtors are the beneficiaries of the resulting trust. They believe that they possess a "strong argument" that "Elixir America held its interests in the KludeIn Funds in trust for the Foreign Debtors' benefit or, alternatively, that the KludeIn Funds hold the ZeeMee Shares and Phenom Shares in trust for the Foreign Debtors' benefit" under applicable Delaware law.[3] (*Id.* ¶

---

[3] The Foreign Representatives argue that because KludeIn Funds, ZeeMee, and Phenom People are each Delaware companies, Delaware law governs. (*See* Motion ¶ 18 (citing *SEC v. Credit Bancorp, Ltd.*, 138 F. Supp. 2d

10

18.) Such law, the Foreign Representatives argue provides that a "resulting trust" is created "when a party pays the purchase price for property that is transferred to another (*i.e.*, purchase-money resulting trusts)." (*Id.* ¶ 19 (quoting *Taylor v. Jones*, No. CIV.A. 1498-K, 2006 WL 1510437, at *4 (Del. Ch. May 25, 2006)).)

This, they assert, is "precisely what happened here." (*Id.*) Although the Foreign Debtors paid the purchase price for the ZeeMee Shares and the Phenom Shares, title to those shares was registered in the name of the KludeIn Funds, and the membership interests in the KludeIn Funds were registered in the name of Elixir America. (*Id.* ¶ 20.) This, the Foreign Representatives argue, makes the Foreign Debtors the beneficial owner of the membership interests in the KludeIn Funds or, alternatively, of the ZeeMee Shares and the Phenom Shares and any proceeds from the disposition of those shares. (*Id.*) And property that is deemed to be held in a constructive trust or resulting trust in a debtor's favor is subject to turnover under section 542 of the Bankruptcy Code. (*Id.* ¶ 21.)

*Second*, the Foreign Representatives alternatively argue that Elixir was a "mere nominee," and the Foreign Debtors maintained equitable ownership of the stock. (*Id.* ¶ 22.) This, they believe, also supports a finding that they are entitled to turnover under section 542. (*Id.*) The Foreign Representatives contend that (i) Elixir American appears to be an affiliate of the Foreign Debtors in light of circumstantial evidence concerning the relationship between the Foreign Debtors and Elixir America, including Mr. Hussain's role as agent of Elixir America (*id.* ¶ 23); (ii) all consideration for membership interests in the KludeIn Funds and underlying

---

512, 531 (S.D.N.Y. 2001), *rev'd on other grounds*, 297 F.3d 127 (2d Cir. 2002) for the proposition that state and federal choice of law rules dictate "'the law of the situs of the property, and therefore the trust, governs [the] determination' of whether property in the possession of a debtor is held in constructive trust.") (alterations in original)); *id.* ¶ 18 (citing *DarkPulse, Inc. v. EMA Fin., LLC*, No. 22 CIV. 45 (LGS), 2023 WL 2307386, at *7 (S.D.N.Y. Mar. 1, 2023) for the proposition that the "situs of stock for purposes of a constructive trust is the state of incorporation")).) As discussed, the Court need not address the merits of the Foreign Representatives' position.

11

ZeeMee and Phenom Shares came from the Foreign Debtors as opposed to Elixir America (*id.* ¶ 24); (iii) the Foreign Debtors' books and records reflect that the Foreign Debtors held title to the Phenom and ZeeMee Shares that were not conveyed to Elixir America (*id.* ¶ 25.); and (iv) KludeIn Funds paid distributions on account of investments registered in Elixir America's name directly to ECM (*id.* ¶ 26).

Whether the Foreign Representatives ***actually*** possess a strong basis to compel turnover, however, is not necessary to evaluate whether the first *Iridium* Factor is satisfied. Rather, the inquiry is whether the ***balance*** of the litigation's possibility of success is outweighed by a settlement's future benefits. *See Iridium*, 478 F.3d at 465 (affirming the bankruptcy court's assessment that the first and second *Iridium* Factors were satisfied after balancing the benefits of partaking in an expensive and complex lawsuit, even if ultimately successful, against the benefits of the settlement). Here, the Foreign Representatives have shown that that is the case. Notwithstanding the Foreign Representatives' position that they possess strong arguments that they would be entitled to turnover, the Foreign Representatives also believe that litigation over ownership of the Phenom and ZeeMee Shares would be "costly." (*Id.* ¶ 27.) Collectively, such shares have an "estimated combined value of less than a few million dollars." (*Id.*) Therefore, they assert, settlement is the "only reasonable way to resolve these issues." (*Id.*)

Accordingly, the first *Iridium* Factor favors approval of the Settlement.

    2.    <u>The Likelihood of Complex and Protracted Litigation</u>

Similarly, the Foreign Representatives' belief that litigation over the Phenom and ZeeMee Shares could be "costly," thereby rendering settlement as the "only reasonable" means of resolution, also supports a finding that the second *Iridium* Factor weighs in favor of approval. (*See id.* ¶ 27.)

3. <u>The Paramount Interests of Creditors</u>

Under the terms of the Settlement Agreement, the Foreign Debtors are receiving all the remaining shares held by the KludeIn Funds. (*Id.* ¶ 28.) This is being achieved without the Foreign Debtors "sacrificing any value that might otherwise be recovered in litigation." (*Id.*) Thus, the Foreign Debtors' stakeholders only stand to benefit from this settlement. (*Id.*)

Given the Settlement's likeliness to conserve estate assets and maximize value for creditors, the third *Iridium* Factor also favors approval of the Settlement.

4. <u>Whether Other Parties in Interest Support the Settlement</u>

All parties were apprised of the Motion, and no parties have objected. (*See Certificate of No Objection*, ECF Doc. # 28.) Moreover, the Foreign Debtors' largest stakeholder, MAVCAP, supports the Settlement. (Motion ¶ 29 (citing Green Decl. ¶ 27).)

Accordingly, this factor also weighs in favor of approval.

5. <u>The Competency and Experience of Counsel Supporting, Experience and Knowledge of the Bankruptcy Court Judge Reviewing, the Settlement</u>

The KludeIn Funds' management is represented by Paradigm Counsel LLP, and the Foreign Representatives are represented by Pillsbury Winthrop Shaw Pittman LLP. (*Id.* ¶ 30.) The competency and experience of counsel and the presiding judge in this proceeding has not been questioned by any party. Moreover, the Foreign Representatives submit that both law firms have "experience in negotiating settlements of this nature." (*Id.*) The fifth *Iridium* Factor, therefore, favors approval of the Settlement.

6. <u>The Nature and Breadth of the Releases of Officers and Directors</u>

Under the Settlement Agreement, the Foreign Debtors have agreed to release the KludeIn Funds and the KludeIn Funds' legal predecessors, successors and assigns, affiliates, heirs, beneficiaries, executors, representatives, agents, servants, employees, attorneys, partners, and

insurers, and each of them from any and all claims arising out of, based upon, or relating to the KludeIn Funds' exercise of possession of the ZeeMee Shares or the Phenom Shares. (*Id*. ¶ 31.) Specifically, section 7 of the Settlement Agreement provides:

> Subject to the occurrence of the Effective Date, the Foreign Representatives, on behalf of ECM and the Designee and both of their respective legal predecessors, successors and assigns, directors, managers, officers, members, shareholders, affiliates, heirs, beneficiaries, executors, representatives, agents, servants, employees, attorneys, partners, and insurers, and each of them (each, a "Releasor"), do hereby release and forever discharge the KludeIn Funds and the KludeIn Funds' legal predecessors, successors and assigns, affiliates, heirs, beneficiaries, executors, representatives, agents, servants, employees, attorneys, partners, and insurers, and each of them (collectively the "Transferor Released Parties"), of and from any and all claims, demands, damages, debts, liabilities, actions, and causes of action of every kind and nature whatsoever, whether now known or unknown, which each Releasor ever had, now has, or may hereafter have, against the Transferor Released Parties or any of them ("Claims"), arising out of, based upon, or relating to the KludeIn Funds' exercise of possession of the Shares. Notwithstanding anything to the contrary set forth herein, Abrar Hussain, Arshad Ahmed, and Amiruddin Azahar are not Transferor Released Parties and are not receiving any release hereunder.

(Settlement Agreement § 7.) As reflected above, the releases are limited to the "KludenIn Funds' exercise of possession of the Shares." (*Id.*) Moreover, each of the Foreign Debtors' three directors are excluded from the releases. In light of such, the scope of such releases is appropriate. Given the foregoing, the sixth *Iridium* Factor weighs in favor of approval as well.

   7.   <u>The Extent to Which the Settlement is the Product
        of Arm's-Length Bargaining</u>

The Foreign Representatives submit that the Settlement is the product extensive discussions over the course of more than six months between the Foreign Representatives and their counsel, the KludeIn Funds and their counsel, and ZeeMee and Phenom People. (*Id*. ¶ 32.) No party has objected to the Motion on these grounds, and there is no reason to think otherwise. This final *Iridium* Factor also favors approval of the Settlement.

14

### B. Relief Under Section 1521(b) is Appropriate

Section 1521(b) provides that, upon recognition, a court may grant the request of a foreign representative to entrust distribution of a debtor's assets located in the United States to a foreign representative or another person authorized by the court subject to its satisfaction that U.S. creditors' interests are "sufficiently protected." 11 U.S.C. § 1521(b). As noted, "sufficient protection" under section 1521(b) embodies three basic principles: "the just treatment of all holders of claims against the bankruptcy estate, the protection of U.S. claimants against prejudice and inconvenience in the processing of claims in the [foreign] proceeding, and the distribution of proceeds of the [foreign] estate substantially in accordance with the order prescribed by U.S. law." *Markus*, 610 B.R. at 76 (alterations in original) (quoting *Atlas Shipping*, 404 B.R. at 740).

Here, granting the requested section 1521(b) relief is appropriate. The Foreign Representatives intend to distribute the shares (or proceeds from the sale of such shares) in the Cayman Proceedings. (Motion ¶ 34.) Additionally, they indicate that while the Foreign Debtors have "no known U.S. creditors," the Cayman Proceedings, in any event, offer a forum for all of the Foreign Debtors' creditors to submit claims, irrespective of their location. (*Id.*) This Court previously concluded in *Atlas Shipping*, a case that similarly involved no U.S. claimants, that such relief may be granted where no claimants held claims that had any connection to the United States (other than a successful garnishment of certain funds in support of their respective foreign arbitrations against the debtor). *See Atlas Shipping*, 404 B.R. at 741. Moreover, a pending foreign bankruptcy proceeding recognized as a foreign main proceeding under chapter 15 of the Bankruptcy Code, as is the case here, "provides a forum for all creditors seeking to satisfy their claims against a foreign debtor, plaintiffs such as the creditors in this case have a proper forum available to them and they are not left to scour the globe for the debtor's assets." *Id.* at 741–42.

15

Where creditors are sufficiently protected, section 1521(b) provides sufficient grounds to award turnover relief. *See id.* at 742 (concluding that a foreign representative may be permitted to remove garnished funds from the United States pursuant to section 1521(b) with such funds subject to administration by a Denmark bankruptcy court, thereby protecting creditors). Indeed, ordering turnover offers an "economical and efficient" means of addressing creditor claims, if any, as it provides a single forum of competent jurisdiction for all creditors worldwide to pursue their rights and remedies. *See id.* This is consistent with the recognized intent of section 1521(b), which is to ensure that U.S. creditors are "not prejudiced by the turnover beyond being subject to the same situation as creditors in the country in which the distribution will be made." 8 COLLIER ON BANKRUPTCY ¶ 1521.03 (16th 2024).

Accordingly, as the shares (or proceeds from the sale of these shares) would be distributed through the Cayman Proceedings, creditor interests are sufficiently protected, and relief under section 1521(b) is **GRANTED**.

### IV. CONCLUSION

For the reasons discussed, the Court (i) **GRANTS** the Motion and **APPROVES** the Settlement, and (ii) **APPROVES** the request for the ZeeMee and Phenom Shares to be transferred to the Foreign Representatives for distribution in the Foreign Debtors' pending official liquidation proceedings in the Cayman Islands pursuant to section 1521(b) of the Bankruptcy Code.

A separate Order attached as Exhibit A to the Motion will be entered.

Dated:   November 7, 2024
         New York, New York

                                                    *Martin Glenn*
                                              MARTIN GLENN
                                         United States Bankruptcy Judge

16